*In re* MEREDITH

Docket No. 95040. Submitted March 11, 1987, at Detroit. Decided July 21, 1987.

Mary Ann Clifford and her husband James D. Clifford petitioned in the Tuscola County Probate Court to adopt the two minor children of Mary Ann by a former marriage. The petitioners also filed a supplemental termination request seeking an order terminating the parental rights of respondent, Mark S. Meredith, the father of the children. The supplemental petition alleged that for two years or more before the filing of the adoption petition respondent had failed to substantially comply with the conditions of a support order entered by a Texas court when Mary Ann and Mark were divorced. It further alleged that for two years or more before filing of the petition, in spite of his ability to do so, respondent had substantially failed or neglected to visit, contact and communicate with the children. The probate court, W. Wallace Kent, Jr., J., entered an order terminating the respondent's parental rights. Respondent appeals.

The Court of Appeals *held:*

1. The probate court did not err in finding by clear and convincing evidence that respondent failed and neglected to visit or communicate with his children although able to do so.

2. The probate court properly found by clear and convincing evidence that the respondent for two years and more preceding the filing of the petition for adoption failed to substantially comply with the support order.

3. The probate court correctly found that the explanations

REFERENCES

Am Jur 2d, Adoption §§ 31 *et seq.*

Am Jur 2d, Divorce and Separation §§ 1018 *et seq.*

Am Jur 2d, Parent and Child §§ 7, 78.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

Award of custody of child where contest is between natural parent and stepparent. 10 ALR4th 767.

What constitutes abandonment or desertion of child by its parent or parents within purview of adoption laws. 35 ALR2d 662.

and excuses offered by respondent for nonsupport were insufficient to prevent the court from exercising its discretion in favor of terminating his parental rights.

4. The probate court did not err in relying on *In re Colon,* 144 Mich App 805 (1985), in interpreting the language of MCL 710.51(6)(a); MSA 27.3178(555.51)(6)(a), "having the ability to support, or assist in supporting," as not applicable to an existing support order, but as being applicable only when no support order exists.

Affirmed.

1. Adoption — Adoption Code — Termination of Parental Rights — Parent and Child — Child Support.

An adopting parent who seeks to terminate the parental rights of a natural parent, against whom there is already a support order, need only prove a substantial failure to comply with the support order for two years prior to the filing of the petition; he need not also prove the natural parent's ability to comply with the order; the probate court may in its discretion terminate the natural parent's rights once the adopting parent proves substantial failure to comply with the support order (MCL 710.51[6]; MSA 27.3178[555.51][6]).

2. Adoption — Adoption Code — Termination of Parental Rights — Constitutional Law.

A petitioner who seeks to terminate parental rights under the Adoption Code must show by clear and convincing evidence that the termination is warranted since a parent's right to the custody of his children is a fundamental liberty guaranteed by the Fifth and Fourteenth Amendments (US Const, Ams V, XIV).

3. Adoption — Adoption Code — Stepparent Adoptions.

The language in the Adoption Code concerning stepparent adoptions which provides that the court may issue an order terminating the rights of the other parent if the other parent "having the ability to support, or assist in supporting" the child has failed or neglected to provide regular and substantial support for the child is not applicable to an existing support order and is only applicable when no support order exists (MCL 710.51[6][a]; MSA 27.3178[555.51][6][a]).

*House & Schrope* (by *Clinton C. House*), for petitioners.

*George A. Holmes, P.C.* (by *Robert A. Betts*), for respondent.

Before: CYNAR, P.J., and WEAVER and M. H. CHERRY,* JJ.

WEAVER, J. Respondent appeals as of right from a probate court order terminating his parental rights to his two minor children pursuant to the Michigan Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6).[1] We affirm.

I

When petitioner Mary Ann Clifford and respondent Mark Steven Meredith were divorced in Texas on February 15, 1982, petitioner received general custody of their two minor children. Respondent was awarded limited custody for specified times and was ordered to pay $300 per month in child support. Respondent was employed by a computer firm at the time.

During 1983 and 1984, although respondent's parents contributed some child support, respondent himself provided none, and sent only $100 per year in each of the years 1985 and 1986. Although petitioner continued to reside at the same Houston address from July of 1982 through August of 1985, and although respondent lived

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Section 51(6) of the Adoption Code provides in pertinent part:

(6) If the parents of a child are divorced . . ., and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

(a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

within a one-half hour drive, respondent visited the children only twice in 1983, not at all in 1984, and twice in 1985. He did not telephone and did not send birthday or Christmas cards or gifts in 1983 or 1984. In April, 1984, petitioner married co-petitioner James Clifford, and in August of 1985 moved to Michigan, informing respondent of her new post office box address. Following the move, respondent wrote only one letter to his children. Respondent never explained his failure of support or visitation.

The Tuscola County Probate Court judge terminated respondent's parental rights at a hearing subsequent to the filing by Mary Ann and James Clifford of an adoption petition and a supplemental termination request. Pursuant to the Michigan Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6), the supplemental petition had alleged that for two years or more before the filing of the adoption petition respondent had failed to substantially comply with the conditions of a support order; it further alleged that for two years or more before filing of the petition, in spite of his ability to do so, respondent had substantially failed or neglected to visit, contact and communicate with the children. The court also denied respondent's motion for reconsideration. Respondent appeals as of right, arguing trial court error in its findings that respondent had the ability to maintain contact with and to assist in supporting his children.

II

Respondent argues that he was unable to maintain regular contact with his children because of the financial difficulties he experienced subsequent

to the divorce.[2] He contends that he stopped regular visitation in 1982 because he felt guilty and did not like the children carrying messages from their mother about needing support money; he did not see the children when they visited his parents because he thought that, if petitioner found out, she would end the visits.

We do not agree with respondent's contention. Like the probate judge, we fail to see why respondent did not make an effort to maintain greater contact with his children in spite of the alleged hardships. Although respondent claims fear that petitioner might have interfered with his court-ordered visitation rights, she never actually did so, and there is no evidence of threats to this effect. In any event, respondent made almost no effort to even call or write. Hence we discern no error in the probate court's finding by clear and convincing evidence that respondent failed and neglected to visit or communicate with his children although able to do so. MCL 710.51(6)(b); MSA 27.3178 (555.51)(6)(b).

### III

Respondent also argues that the probate court erred in its finding that he had been able to support or assist in supporting his children. We believe that respondent misstates the court's finding; the court's actual finding was that respondent had failed to investigate additional means of support through unemployment benefits in order to

___

[2] Respondent asserts that, although at the time of divorce he was gainfully employed, he lost his job in September of 1982 and had to do odd jobs, which paid very poorly, until July of 1985. He maintains that he did not get his support obligation reduced because he could not afford to retain counsel, the legal aid office would not take his case, and he did not have enough funds to pay the filing fee to represent himself. He said he did not apply for unemployment benefits because he did not believe in them.

send even token payments as proof of concern for his children.

The probate court initially appeared somewhat sympathetic toward respondent's claim of inability to pay. However, pursuant to *In re Colon,* 144 Mich App 805; 377 NW2d 321 (1985), the court found that since respondent was subject to a support order his financial ability to support the children need not be proven by petitioner for termination under the Michigan Adoption Code.

*Colon* held that under the Adoption Code the adopting parent who seeks to terminate the parental rights of a natural parent, against whom there is already a support order, need only prove a substantial failure to comply with the support order for two years prior to the filing of the petition; he need not also prove the natural parent's ability to comply with the order. *Colon, supra* at 810-811; MCL 710.51(6)(a); MSA 27.3178 (555.51)(6)(a). Once the adopting parent proves substantial failure to comply with the support order, the probate court may terminate, or not terminate, the natural parent's rights, as the court, in its discretion, may decide.

In the instant case the court properly found by clear and convincing evidence that the respondent for "two years and upwards preceding the filing of the petition for adoption failed to substantially comply with the support order." The court also found:

> [The respondent] relies upon the language of [*Colon,* which stated] that "[h]ad (respondent) offered evidence to satisfactorily explain his failure to comply, the probate court could have properly declined to terminate his parental rights." *Colon* at 812. This court interprets such language to mean that such testimony could have been considered by the Probate Court in deciding whether or

not the explanation for failure to pay support sufficiently mitigates against the exercise of the court's discretion to terminate parental rights as to cause the court to deny the petition for termination. This court does not interpret such language to require the Probate Court to refuse termination even if excuses for nonsupport were offered to the court.

We agree with the court's analysis. In the instant case, the probate court correctly found that the explanations and excuses offered by respondent for nonsupport were insufficient to prevent the court from exercising its discretion in favor of terminating his parental rights. The court viewed respondent's behavior as inconsistent with that of a caring parent who naturally would wish to support his children both financially and emotionally. In its written opinion the court clearly enunciated its reasons favoring termination, expressing incredulity that although respondent was able to further his own lifestyle (which included heavy borrowing from his parents, subsisting by the generosity of his girlfriend and maintaining two vehicles), he could not produce the $50 filing fee to seek a necessary modification of his support obligation and was unwilling to request public assistance by which to make even token payments to support his children.

Respondent appears to argue that *Colon, supra,* places poor parents at greater risk of losing their children; hence respondent suggests that *Colon* was wrongly decided and the probate court erred when following it. We do not think that respondent's conclusion correctly follows from a reading of *Colon. Colon* appropriately noted that the burden remains with the petitioner to show by clear and convincing evidence that termination is warranted, since the right to custody of one's children

is a fundamental liberty guaranteed by the Fifth and Fourteenth Amendments. *Colon, supra* at 813; US Const, Ams V, XIV. See also *In re Myers,* 131 Mich App 160, 165; 345 NW2d 663 (1983). *Colon* engaged in careful statutory analysis, interpreting the language of MCL 710.51(6)(a); MSA 27.3178(555.51)(6)(a), "having the ability to support, or assist in supporting,"[3] as not applicable to an existing support order, but as only applicable when no support order exists. *Colon, supra* at 809-812. We find the analysis in *Colon* to be a reasonable interpretation of the statute.

Since we are in accord with the reasoning of *Colon,* which imposes no requirement on a petitioner for adoption concerning a respondent's ability to pay where there is an existing support order, we find no error in the probate court's reliance on *Colon.* Had respondent been genuinely interested in his children, he could have petitioned the circuit court for a modification of the support order on a showing of changed circumstances. *Jacobs v Jacobs,* 118 Mich App 16; 324 NW2d 519 (1982). In so concluding, we need not decide whether to apply a de novo standard of review[4] or a "clearly erroneous" standard,[5] as we reach the same result under either standard.

Affirmed.

---

[3] See n 1, *supra.*

[4] *Bahr v Bahr,* 60 Mich App 354, 360; 230 NW2d 430 (1975), lv den 394 Mich 794 (1975).

[5] *In re Irving,* 134 Mich App 678; 352 NW2d 295 (1984).